SCHERZ *v.* PEOPLES NATIONAL BANK, GUARDIAN.

4-8712                                                                    218 S. W. 2d 86

Opinion delivered March 14, 1949.

*Melbourne M. Martin,* for petitioner.

*Gerland Patten* and *Shelby R. Blackmon,* for respondent.

ED. F. McFADDIN, Justice. By petition for *certiorari* filed in this court, Otto Scherz seeks to quash an order of the Pulaski Probate Court made on September 10, 1946, and which order petitioner claims is void on its face.[1] The said probate order reads:

''On this day comes on to be heard the information of Lyle L. Scherz in the above entitled matter, and the said Otto Scherz being present and after examination by the court and on the testimony of Grady W. Reagan,

---

[1] If the order be void on its face, it may be quashed on *certiorari. Sharum* v. *Meriwether,* 156 Ark. 331, 246 S. W. 501; *Pritchett* v. *Road Imp. Dist.,* 142 Ark. 509, 219 S. W. 21; and *Grinstead* v. *Wilson,* 69 Ark. 587, 65 S. W. 108.

M. D., and John N. Robertson, M. D., it is found that the said Otto Scherz is mentally incompetent and unable to manage his business, his estate and his affairs, and that it is necessary for the protection of his estate and of his person that a guardian be appointed.

"It is therefore ordered, adjudged and decreed that Lyle L. Scherz be and he is hereby appointed guardian of the person and estate of the said Otto Scherz."

The petitioner claims the foregoing order is void on its face, because (a) the order affirmatively shows that the petitioner was present in court when the order was made, and (b) his mental incompetency was not determined by a jury. Petitioner insists that a jury trial is a jurisdictional prerequisite to an adjudication of mental incompetency when the alleged incompetent is present in court. Is petitioner correct? Unless he is correct in these claims, then the order is not void on its face, and is not subject to being quashed by *certiorari*.

I. *Petitioner Claims that Our Statutes Require a Jury Trial in a Sanity Case such as the one here.* As authority for his contention, petitioner cites Act 191 of 1945, which Act we now consider. It is captioned "An Act to Provide for the Appointment and Removal of Guardians of Insane Persons, and for Other Purposes." Section I says: "Probate Courts, within their respective counties, shall have power and jurisdiction to appoint guardians for idiots, lunatics, and persons of unsound mind, in the following cases:

"Subdivision 1. Whenever it be found by a jury that a person is of unsound mind or incapable of managing his own affairs."

Subdivision 2 allows the probate court to appoint a guardian for an insane person confined in the State Hospital, or other named institutions, without "requiring the presence of such person before the court." Subdivision 3 allows the probate court to appoint a guardian for an insane person without requiring such person to be before the court, if such person be so physically incapacitated as to be unable to be present before the court;

and in the event of such appointment, certain publication is required to be made.

Sections 2 and 3 of said Act 191 are not material here. Section 4 reads in part as follows: ''All laws and parts of law in conflict herewith are expressly repealed and §§ 7553, 7554 and 7555 of Pope's Digest of the Statutes of Arkansas are hereby specifically repealed; . . .''

It is clear from the above resume that the Act related to the appointment of a guardian of a person who had been previously adjudicated to be of unsound mind.

The Act 191 does not purport to set forth the conditions and the procedure under which the probate court can exercise its jurisdiction to judicially declare a person to be mentally incompetent. That procedure is contained in § 7546, Pope's Digest (which comes to us from chapter 78, § 2 of the Revised Statutes of 1838), which prescribes the proceedings for inquiring into the sanity of any person whose mental condition has been brought in issue before the probate court. This § 7546 reads: ''If any person shall give information in writing to such court that any person in his county is an idiot, lunatic, or of unsound mind, and pray that an inquiry thereof be had, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall cause the person so charged to be brought before such court, and inquire into the facts by a jury, if the facts be doubtful.''

We hold that § 7546, Pope's Digest, was not repealed by said Act 191 of 1945; and under § 7546, we have repeatedly held—as shown in Topic II—that a jury trial is not required in a case such as this.

II. *Petitioner claims that Article II, Section 7 of our State Constitution guarantees him a jury trial in a sanity case such as this one;* and he cites us to 28 Am. Juris. 666 wherein are listed several states which require a jury trial in sanity cases. We held in *Sharum* v. *Meriwether,* 156 Ark. 331, 246 S. W. 501, that the probate court, without the interposition of a jury, had jurisdiction

to judicially determine a person to be mentally incompetent when such person (a) had been properly informed against, (b) was before the court at the time of the hearing, and (c) made no demand for a jury trial. In the Sharum case, we also held that a trial by jury was not a constitutional right in sanity cases, because (1) our constitutional provision guaranteeing trial by jury extended only to cases where at common law the issues of fact were triable by jury, and (2) at common law there was no right of trial by jury in sanity cases. We now reaffirm the holding in the Sharum case, and furthermore hold that Amendment 24 to our Constitution does not change the rule as announced in the Sharum case. Cases citing and affirming the Sharum case are: *Monks* v. *Duffle,* 163 Ark. 118, 259 S. W. 735; and *Sanders* v. *Omohundro,* 204 Ark. 1040, 166 S. W. 2d 657.

III. *Petitioner claims that to adjudicate him incompetent without giving him a jury trial is to deprive him of "due process" as guaranteed by the Federal Constitution.* We hold this contention to be without merit. In *Simon* v. *Craft,* 182 U. S. 427, 45 L. Ed. 1165, 21 S. Ct. 836, the United States Supreme Court, in discussing due process in an insanity proceeding, said:

"It is also urged as establishing the nullity of the appointment of a guardian of the estate of Mrs. Simon, that the proceedings failed to constitute due process of law, because (1) they were special and statutory, and the petition failed to state sufficient jurisdictional facts; (2) a jury was not impaneled as provided by law; and (3) there was no finding in the verdict of the jury or the order entered thereon, ascertaining and determining all the facts claimed to be essential to confer jurisdiction to appoint a guardian. But the due process clause of the 14th Amendment does not necessitate that the proceedings in a state court should be by a particular mode, but only that there shall be a regular course of proceedings in which notice is given of the claim asserted, and an opportunity afforded to defend against it. *Louisville & N. R. Co.* v. *Schmidt,* 177 U. S. 230, 236, 44 L. Ed. 747, 750, 20 Sup. Ct. Rep. 230, and cases cited. If the essen-

tial requisites of full notice and an opportunity to defend were present, this court will accept the interpretation given by the state court as to the regularity, under the state statute, of the practice pursued in the particular case."

See, also, *Montana Co.* v. *St. Louis Co.*, 152 U. S. 160, 38 L. Ed. 398, 14 S. Ct. 506; and see *Re Moynihan*, 332 Mo. 1022, 62 S. W. 2d 410, 91 A. L. R. 74, and cases therein cited; and the annotation in 91 A. L. R. 88.

The probate judgment here challenged recites that Otto Scherz had been informed against, and was present in court at the time of the trial. The record does not show that he demanded a jury; in fact, it is not now claimed that he did. The probate judgment here challenged is valid on its face, so we deny the motion to quash as prayed in the *certiorari* petition.